THE NATIONAL LIFE AND ACCIDENT COMPANY OF NASHVILLE, RESPONDENT, v. MARY LAY ET AL., DEFENDANTS; MINNIE OUSLEY, APPELLANT.—39 S. W. (2d) 1070.

Kansas City Court of Appeals. Opinion filed May 25, 1931.

*Harry S. Saunders* for appellant Mary Lay.

*James D. Pouncey* for appellant Minnie Ousley.

ARNOLD, J.—This is an action growing out of conflicting claims for the benefits of two insurance policies.

The record shows that one William Woodson was insured under two life insurance policies issued by the National Life and Accident Insurance Company of Nashville, Tenn., one on Nov. 21, 1927, for $405, and the other on the same day for $63. The beneficiary named in each policy was one Mary Lay, named as cousin of the insured in the applications, and the premiums thereon were paid by her until the death of the insured on August 31, 1929, at Kansas City, Mo. There were two claimants to the proceeds of the insurance, to-wit, Mary Lay, the beneficiary named in the policies, who lived in Kansas City, Missouri, and one Minnie Ousley of Norfolk, Nebraska. The insurer filed a bill of interpleader in the circuit court of Jackson County, Missouri, at Kansas City, returnable to the September term, 1929, alleging the issuance of the policies, giving the designated numbers and amount of each; that due proof of death of the insured had been received; that claims had been made upon the insurer by two adverse claimants, to-wit, Mary Lay and Minnie Ousley; that plaintiff is unable to pay the proceeds of said policies without being subjected to litigation by either or both of adverse claimants; that petitioner has no interest except to see that said proceeds are paid to whomsoever is entitled thereto; that petitioner has paid into court the sum of $468, there to abide the judgment of the court. The prayer is that defendants, Mary Lay and Minnie Ousley, be duly summoned and required to interplead each for her right to the proceeds of said policies; that an order of injunction be issued against each, enjoining her from instituting or prosecuting any suit or proceedings on account of said policies until further orders of the court; that all costs shall be paid out of the said sum tendered into court and plaintiff be discharged from any and all further liability in or under said policies; that plaintiff be allowed a reasonable attorney's fee for the filing of the bill and be allowed to go hence with its costs in this behalf expended.

The defendants each filed separate answer and interpleas. That of Minnie Ousley admits the corporate status of plaintiff; the issuance of the policies, as alleged in the bill of interpleader; the death of insured on August 31, 1929, and that due proof of death was made by her on blanks furnished her by plaintiff. As affirmative matter she denies that Mary Lay is the beneficiary in said policies and states her name was fraudulently inserted in said policies by plaintiff's agent who took the application therefor; that Mary Lay and said agent connived, colluded, made false statements and represented that said Mary Lay was a cousin of insured in order that said Mary Lay could collect the proceeds of said insurance; that said Mary Lay was not related to insured by blood or connected by marriage, nor was insured indebted to Mary Lay prior to, nor at the time of his death.

And said Minnie Ousley denies plaintiff is entitled to an attorney's fee; that in consideration of the insurance of said policies, the insured paid the premiums stipulated in the contract, and at the time of his death, all premiums then due had been paid by this defendant, by request of the insured. Said defendant alleges she has assumed, become liable for and paid the funeral and burial expenses of deceased and paid the premiums which kept the policies in force; that, on or about August 1, 1929, the insured stated by affidavit that he did not name any beneficiary under said policies; that said policies were illegally held by defendant Mary Lay, and requested the beneficiary named in said policies be changed from Mary Lay to Minnie Ousley, sister of insured; that his said sister would pay the premiums on said policies; that at the time he made such affidavit, he anticipated immediate death, and informed plaintiff that in consideration for making his sister the beneficiary, his said sister would pay his funeral and burial expenses and keep his policies in full force and effect.

The answer and interplea further states that at the request of plaintiff the said policies were delivered to E. Hughes, one of the superintendents of plaintiff company at 201 Bruening Building in Kansas City, Missouri, and receipt taken therefor; that E. O. Morris, plaintiff's manager, promised orally and in writing, that said application for change in beneficiary aforesaid would be forwarded to the home office in Nashville, Tenn.; that said E. O. Morris, E. Hughes and L. F. Heflin did conspire, collude and enter into a fraudulent agreement with Mary Lay to hold said policies in the local office of plaintiff at Kansas City, Missouri; and did refuse to get the signature of the insurer for the requested change of beneficiary, for the purpose of defeating, defrauding and cheating this defendant of her right to the benefits of said policies. That defendant complied with the request of plaintiff as to the method of changing the beneficiary in said policies and carried out all instructions relating thereto; that notwithstanding, plaintiff, with fraudulent purpose, failed and refused to carry out said request of the insured. The answer further charges that on or about September 5, 1929, plaintiff assisted in securing proof of death of insured from records of the General Hospital of Kansas City, Missouri, with the purpose of securing for Mary Lay the proceeds of said policies; that demand has been made for payment to this defendant of proceeds of said policies; and plaintiff has refused to pay the same or any part thereof. Judgment is asked in the sum of $468, costs and attorney fees.

The amended interplea of Mary Lay formally admits the corporate status of plaintiff, the issuance of the policies as alleged in the bill, in the amounts pleaded; admits the death of insured on August 31, 1929; and that she executed proof of death as beneficiary under the policies, on the forms provided by plaintiff, and filed the same with

plaintiff; alleges said policies were taken out by insured on his life; denies defendant Minnie Ousley has any right, title or interest in or claim to the proceeds of said policies, and states interpleader Mary Lay is the only party beneficiary under the same and entitled to the proceeds thereof; denies plaintiff is entitled to an attorney fee, as prayed in the petition; alleges she is entitled to recover the proceeds of the policies in issue and her costs. Said interpleader alleges she entered into a verbal contract with insured on or about September 1, 1927, whereby insured was to have his room and board at the home of interpleader, for which insured would pay her $7 per week; that insured remained at her home until November 21, 1927, when said policies of insurance were taken out on his life; at that time insured owed interpleader for room and board for the months of September and October, 1927, and it was then agreed insured should take out an insurance policy on his life to protect this interpleader for the board and room bill then due, to become payable at the death of insured. Interpleader further alleges the insured resided at her home until January 1, 1928, when he became sick and interpleader rendered to him a practical nurse's care until May 13, 1928, when he was taken to City Hospital No. 2, in Kansas City, Missouri. Said interpleader alleges that on or about June 14, 1928, insured again came to her home and remained there until July 8, 1928, and at all times while he was ill at her home, she rendered him the services of a nurse and paid doctor bills for him; that she became liable to one Amanda Cubit for room and board for insured for the month of August, 1929, and that interpleader paid said Amanda Cubit the sum of $30 for room and board for insured while he remained at the Cubit home; that at no time did insured pay any of the premiums on said insurance policies, but that interpleader did pay the same in the amount of $80, until the death of insured; that at the time of his death, the insured owed interpleader the following amounts:

Board and room .........................$320.00
Doctor bills ............................ 10.00
Room and board paid to Amanda Cubit ..... 30.00
Special nurse's care .................... 50.00
Premiums paid on insurance policies ...... 80.00

TOTAL ............................... 490.00

Judgment is asked in the sum of $468, the proceeds of said insurance policies, for which purpose said policies were taken out for her interest and behalf, for her costs and other equitable relief.

Before the suit was tried the court required interpleader Mary Lay to elect whether she would claim the funds as beneficiary or debtor; she elected to proceed as beneficiary, and thereafter a jury was waived and the cause was tried to the court. It was agreed the plaintiff com-

pany was a stockholder of the fund and that the only rights to be considered were the rights of interpleaders to the proceeds of the policies in suit.

Upon the issues thus presented and after hearing the evidence, the court found plaintiff had paid to the clerk of the court the sum of $468 on the policies in issue, and that the facts stated in plaintiff's bill of interpleader are true, and said bill, in all respects is sustained, and plaintiff is discharged from all liability under said policies; and the court further allowed plaintiff the sum of $35, as a reasonable attorney's fee for the filing of said bill, said sum to be deducted from the proceeds of said policies now on deposit with the clerk of the court. And the court further found all the issues in favor of defendant Mary Lay, upon her interplea, and against defendant Minnie Ousley, and dismissed the interplea filed by said defendant Minnie Ousley. It was further ordered that all sums of money now in the hands of the clerk of the court, after payment of costs and attorney fees allowed herein, be paid over to said Mary Lay. Defendant Minnie Ousley duly filed two motions for a new trial, one upon the ground of newly discovered evidence and the other a formal one charging the following errors: (1) The judgment is against the evidence and the weight thereof; (2) judgment is for the wrong parties; (3) the court erred in admitting incompetent, irrelevant and immaterial evidence offered by Mary Lay; (4) in rejecting competent, relevant and material evidence offered by defendant Minnie Ousley; (5) in allowing Mary Lay to file and amend her interplea at the close of defendant Mary Lay's case; (6) failing to make a declaration of law upon which the judgment was rendered; and the judgment is null and void upon the facts of record; (7) refusing to require the court reporter to read from the record the direct testimony of L. F. Heflin at the request of defendant Ousley. Defendant Ousley also filed a motion in arrest of judgment. Said motions were overruled and defendant Minnie Ousley perfected her appeal to this court.

The first matter demanding our attention is the motion of defendant Mary Lay to dismiss the appeal, for the reason the purported abstract of the record filed by appellant is insufficient for the following reasons: (1) It does not contain any record proper; (2) it fails to show a judgment was rendered; (3) fails to show a motion for a new trial was filed and acted upon by the court; (4) fails to show the filing of an affidavit for appeal, or that an appeal was taken; (5) fails to show the bill of exceptions was approved by the court.

An examination of the record presented shows none of the objections urged in the motion is meritorious. While the abstract of the record is somewhat irregular, it is found to contain all the necessary elements required by the statutes and the rules of this court. The motion to dismiss the appeal is accordingly overruled.

Passing to consideration of the appeal on its merits, there are seven assignments of error, the first being the court erred in failing to make an order that plaintiff had been discharged. We cannot consider this charge as affecting the rights of appellant in any way. Plaintiff is the only party which could properly raise this point. The charge cannot be sustained for another reason, to-wit, the judgment contains an order discharging the plaintiff.

The second charge of error cannot be sustained for the reason appellant fails to point out specifically the "incompetent, irrelevant and immaterial evidence" claimed to have been admitted; nor is this point developed in the points and authorities. The point therefore must be ruled against appellant. Citations on this ruling are unnecessary.

The third point attacks the action of the trial court in allowing Mary Lay, at the close of her case, to file "a purported verbal amended interplea." This contention is without merit. Section 1274, Revised Statutes 1919 (819, Revised Statutes 1929), is as follows:

"The court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

By permission of the court, the amendment of which complaint is made, was dictated to the court stenographer and filed, and was made to conform to the proof. Said amendment was as follows:

"Interpleader Mary Lay denies that the interpleader Minnie Ousley has any right, title, or interest in said policies of insurance as beneficiary, or by any other means, and that the said attempted change of beneficiary as claimed by Minnie Ousley was procured by fraud and undue influence over the insured William Woodson while the said William Woodson was on his death bed and was mentally and physically incapacitated to know and realize that he was executing a change in beneficiary, and that same was procured through fraud and undue influence on the part of the interpleader, Minnie Ousley."

Objection was made to allowing the amendment on the ground that it questions the insurable interest of Minnie Ousley and, under the law, no one may question such interest but the insurer; second, that at that time Mary Lay had not shown any fraud or undue influence. In her argument appellant also claims the amendment changes the cause of action stated in the interplea of Mary Lay. The section quoted plainly provides amendments may be made to make the pleadings conform to the proof when such amendment does not "change

substantially the claim or defense." Mary Lay had produced proof tending to show the insured was on his death bed and mentally incompetent at the time the affidavit was made asking change of beneficiary. A physician testified the insured was not mentally competent at that time. It is true appellant later presented testimony of a physician tending to show he was competent at the time. Thus there was presented a question of fact for the determination of the court sitting as a jury. The statute in relation to amendments is liberal and the courts should be, at least, as liberal as the statute in such matters. [Jacobs v. Railroad, 204 S. W. 954; Wright v. Groom, 246 Mo. 158, 151 S. W. 465.] The rule is to allow amendments; the exception to refuse them. [Corrigan v. Brady, 38 Mo. App. 649.] It must be held the amendment did not change the cause of action, the matter was discretionary with the trial court, and we cannot say, as a matter of law, such discretion was abused. [Irwin v. Chiles, 28 Mo. 576.] There was no departure from the pleadings inasmuch as appellant was claiming Mary Lay had no insurable interest in the policies. [Oakley v. Richards, 275 Mo. 266, 204 S. W. 505; Rasch v. Insurance Co., 201 S. W. 919; Stone v. McConnell, 187 S. W. 884.] This point is ruled against appellant.

It is urged the court erred in failing to give declarations of law. This point cannot be sustained as the record fails to show any request was made for findings of fact and declarations of law. Therefore appellant is in no position to urge this point. [Hamilton v. Armstrong, 120 Mo. 597, 25 S. W. 545; Loewen v. Forsee, 137 Mo. 29, 38 S. W. 712.] Furthermore this is an equity case, and the court is not required to give declarations of law.

Appellant insists the court erred in permitting Mary Lay to depart from her pleadings after she elected to proceed as a beneficiary, and then permitted her to present evidence tending to show she was a creditor of insured. The acceptance of this evidence was proper for the reason the pleadings of Mary Lay tended to show she was made the beneficiary in the policies because she was a cousin of insured by marriage and because of the agreement under which she gave him board and room. The evidence complained of was intended to show the status of Mary Lay as the beneficiary named in the policies.

It is urged the court erred in admitting evidence tending to show insured was incompetent to comprehend the purport of the affidavit in evidence asking a change in the beneficiary. There was no error in this respect for the reason appellant maintained at the trial and in her interplea that, at the time said affidavit was made, the insured was on his death bed and it was urged at the trial, he was anticipating immediate death. If it could be shown the beneficiary was attempted to be changed while insured was physically and mentally incompetent—and Dr. Jones testified he was incompetent—then the evidence was properly admitted.

The last assignment of error is the court erred in dismissing appellant's interplea and decreeing Mary Lay entitled to the proceeds of the insurance policies as beneficiary. This charge involves the point urged by appellant that she complied with all plaintiff's requirements as to change of beneficiary and that such change, in fact, was made. We are unable to sustain this conclusion. The testimony shows the change was not complete in that the insurer never recorded its sanction. There was substantial testimony in behalf of Mary Lay from which the trial court, sitting as a jury, might find the attempted change in beneficiary could not be effective because the physical and mental condition of insured at the time were such as to render him incompetent to make such affidavit. It was so held in McAllister v. Benefit Assn., 261 S. W. (Mo. App.) 343.

We have carefully considered the numerous citations of appellant but the conclusions we have expressed are adhered to. We find no reversible error of record, and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.